UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMTO, LLC,

                    Plaintiff,

    v.

BEDFORD ASSET MANAGEMENT, LLC,                    Case No. 14-CV-9913

                    Defendant.                    <u>OPINION & ORDER</u>

BEDFORD ASSET MANAGEMNT, LLC,

                    Third-Party Plaintiff,
        v.

ENERGOKOM, LLC and IVAN
KUZNETSOV,

                    Third-Party Defendants.

<u>Appearances:</u>

Candice Deanna Aiken, Esq.
Bronx, NY
*Counsel for Plaintiff*

Daniel Fredric McGuire, Esq.
Harold F. McGuire, Jr., Esq.
D.F. McGuire & Associates, LLC
White Plains, NY
*Counsel for Defendant-Third-Party Plaintiff*

KENNETH M. KARAS, United States District Judge:

        This Action, brought by Plaintiff AMTO, LLC ("AMTO") against Bedford Asset

Management, LLC ("Bedford"), was removed from the Supreme Court of the State of New

York, County of Westchester on December 16, 2014.  (*See* Dkt. No. 1.)  On December 22, 2014,

Bedford filed a Third-Party Complaint (the "TPC") against Third-Party Defendants Energokom, LLC ("Energokom") and Ivan Kuznetsov ("Kuznetsov").  (*See* Third-Party Complaint ("TPC") (Dkt. No. 5).)  Before the Court is Bedford's Motion to Serve Third-Party Defendant, Ivan Kuznetsov[,] Through Alternative Means, (*see* Dkt. No. 22).  For the following reasons, the Motion is granted.

I.   <u>Background</u>

A.   <u>Factual Background</u>

The following facts are drawn from the TPC and are taken as true for the purpose of resolving the instant Motion.  The TPC alleges that "[o]n information and belief, Kuznetsov is a citizen of the United States of America who resides in St. Petersburg, Russia."  (TPC ¶ 1.) Kuznetsov owns 100% of AMTO, a Latvian company, and "is able to (and does) control all of [AMTO's] activities, personally or through his agent Leonid Krijanovskis, [AMTO's] chief executive."  (*Id.* ¶ 2.)  The TPC also alleges that, "[o]n information and belief, Kuznetsov, through an offshore corporate structure, is . . . the largest beneficial owner of Energokom, a Latvian company, and is able to (and does) control all of Energokom's activities, personally or through his agent Leonid Krijanovskis, Energokom's chief executive officer."  (*Id.* ¶ 3.)

As of October 1, 2012, Energokom owed Bedford more than $367,000, as a result of a $300,000 loan that a Cyprus company named Tomkins Limited made to Energokom on February 10, 2010 with a repayment date of February 1, 2011, pursuant to a loan agreement that provided for interest at 18% per year (the "Tomkins Loan").  (*Id.* ¶¶ 13–14.)  As of September 2012, Energokom held two promissory notes from Bedford memorializing two loans (the "First Loan" and the "Second Loan") in the total amount of $154,000.  (*Id.* ¶ 15.)  Bedford acquired the rights to collect all amounts due from Energokom under the Tomkins Loan, and to set off any amounts

2

due to Energokom on the First Loan and the Second Loan against the balance due on the

Tomkins Loan.  (*Id.* ¶ 16.)  Bedford demanded payment of the Tompkins Loan from Energokom

and demanded that its rights of setoff be recognized.  (*Id.*)

The TPC alleges that Energokom has never paid any part of the principal of the Tomkins

Loan, has not paid any interest thereon since April 14, 2011, and, at Kuznetsov's direction, has

not recognized Bedford's rights of setoff.  (*Id.* ¶ 17.)  Accordingly, the Tomkins Loan is past due

and interest continues to accrue thereon at 18% per year.  (*Id.*)  The TPC alleges that "[a]ll

efforts to collect the overdue principal and interest due from Energokom on the Tomkins Loan

(in an amount now well in excess of $400,000) have been completely frustrated to date by

Kuznetsov's actions."  (*Id.* ¶ 18.)  Moreover, the TPC alleges that "[o]n information and belief,

in or about October 2012[,] Kuznetsov caused Energokom to convey its rights under the First

Loan and the Second Loan to [AMTO] without fair consideration and with actual intent to

hinder, delay, or defraud Energokom's creditors (specifically, Bedford) with respect to

Energokom's obligations to repay the Tomkins Loan."  (*Id.* ¶ 19.)

B.  Procedural History

On December 16, 2014, the instant Action was removed from the New York Supreme

Court, County of Westchester, based on diversity grounds.  (*See* Dkt. No. 1.)  On December 22,

2014, Bedford filed the TPC against Energokom and Kuznetsov alleging fraudulent conveyance

in violation of New York Debtor and Creditor Law § 276 and tortious interference with

Bedford's contractual rights.  (TPC ¶¶ 21–34.)  In a letter dated February 16, 2015, Bedford

requested a pre-motion conference to file a motion for an order pursuant to Fed. R. Civ. P. 4(f),

authorizing substituted service on Kuznetsov.  (Dkt. No. 9.)  In a letter dated February 21, 2015,

AMTO advised that it took no position on Bedford's request.  (Dkt. No. 10.)  On February 25,

2015, the Court directed Bedford to provide its papers in support of the proposed motion by March 6, 2015.  (*See* Dkt. No. 15.)  Accordingly, on March 5, 2015, Bedford filed the instant Motion, (Dkt. No. 22), its Memorandum of Law in Support of the Motion, (Third-Party Pl.'s Mem. of Law in Supp. of Mot. For Substituted Service ("Bedford Mem.") (Dkt. No. 23)), and an Affirmation of Yaron Kupfer in Support of the Motion, (Aff. of Yaron Kupfer in Supp. of Mot. for Substituted Service of Process ("Kupfer Aff.") (Dkt. No. 24)).

In his affirmation, Kupfer, an attorney admitted to practice before the bar of the State of Israel, avers that he has "become familiar with efforts—ultimately successful—to bring Kuznetsov into litigation in England (the 'English Litigation') by means of substituted service of process."  (Kupfer Aff. ¶¶ 1, 3.)  Kuznetsov is the sole defendant in the English Litigation, which is ongoing.  (*Id.* ¶¶ 3, 7–8.)  Kupfer states that he has "come to know Kuznetsov's home and business addresses in St. Petersburg, Russia and his business email address, which he uses to conduct business internationally."  (*Id.* ¶ 4.)  Specifically, Kupfer states that Kuznetsov's "home address is Apt. 13A 5 Lipovskiy Proezd Sosnoviy Bor, Leningrad Region, Russian Federation 188544 [the "Home Address";] [h]is business address is 39 Radischeva Street, St. Petersburg, Russian Federation 191123 [the "Business Address";] . . . [and] [h]is business e-mail address is kuzniv@gmail.com [the "Email Address"]."  (*Id.*)  Kupfer avers that he has "communicated with [Kuznetsov] on business matters at [the Email Address]."  (*Id.*)  Kupfer also states that he "can confirm from personal knowledge that Kuznetsov is fluent in written and spoken English, and [Kupfer has] been told by people [that he] consider[s] reliable (but do[es] not know [based on his] personal knowledge) that Kuznetsov is an American citizen."  (*Id.*)

The affirmation further states that the plaintiff in the English Litigation served documents "on several occasions at [the Home Address and the Business Address], and a Russian court

official stated . . . in a telephone conversation [that] Kuznetsov acknowledged receiving those copies." (*Id.* ¶ 5.)  According to Kupfer, "the English High Court of Justice (Queen's Bench Division) reviewed these facts and ultimately determined that Kuznetsov had received actual notice of the claim against him in the English Litigation, and that such notice was sufficient." (*Id.* ¶ 6.)  To his affirmation, Kupfer attaches an order dated May 1, 2014 from the English High Court of Justice (Queen's Bench Division) (the "QB Order"), which provides the plaintiff in the English Litigation with permission to serve the QB Order on Kuznetsov by sending a copy to the Email Address and by courier addressed to the Business Address. (*Id.* Ex. A.)  Kupfer affirms that after the QB Order, "Kuznetsov retained . . . lawyers [from the] London office of the international firm of Simmons & Simmons, [who have] appeared and participated in the English Litigation[,] . . . which demonstrates that service of the QB Order by e-mail and courier was effective." (*Id.* ¶ 7.)  Kupfer states that the address of these lawyers, whom he identifies as Jane Fedotova, Taitiana Menshenina, and Patrick Boylan, is: City Point, One Ropemaker Street, London EC2Y 9SS, United Kingdom. (*Id.*)  Kupfer "confirm[s] that at no stage of the English [Litigation] did Kuznetsov challenge the validity of the service made on him in accordance with the QB Order." (*Id.* ¶ 8.)

On May 7, 2015, in response to the Court's questions at a conference held on April 21, 2015, Bedford submitted a supplemental letter motion with two additional affidavits from Barry Raymond Samuels ("Samuels") and Alexander Altman ("Altman"). (Dkt. No. 28.)  Samuels is an English solicitor who represents New Media Holdings LLC, which is the plaintiff in the English Litigation. (Supp. Aff. of Barry Raymond Samuels ("Samuels Aff.") ¶¶ 1, 3 (Dkt. No. 28-1).)  Samuels explains that the English Litigation involves "a claim for a sum of money due from Kuznetsov pursuant to a written agreement dated [January 27, 2010,] whereby Kuznetsov

agreed to acquire, on demand, 16.66% of the shares" in Energokom from New Media Holdings
LLC.  (*Id.* ¶ 3.)  Samuels states that the written contract for the purchase of the Energokom
shares specified that notice of the demand was to be emailed to the Email Address or mailed to
the Business Address.  (*Id.* ¶ 4.)  Samuels avers that he "can attest that the [Email
Address] . . . was active and in use by Kuznetsov when notice of demand was sent to Kuznetsov
at that address by [Samuels] at various times in late 2012 and early 2013."  (*Id.* ¶ 5.)  Samuels
states that he "never received notice that any of [his] emails had failed to be delivered and . . .
when [he] first emailed Kuznetsov at the [Email Address] at the end of November 2012[,] raising
queries about his conduct in relation to Energokom[,] [he] received a reply by email addressed to
[Samuels] from [Kuznetsov], signed by his lawyer on his behalf."  (*Id.*)  Samuels avers that
service of the QB Order on Kuznetsov via the Email Address and by courier addressed to the
Business Address was effective to provide Kuznetsov with notice of the English Litigation.  (*Id.*
¶ 8.)  Samuels states that he has communicated with Kuznetsov's lawyers from Simmons
& Simmons and that he is "aware from those communications that they claim to be taking
instructions . . . from Kuznetsov in Russia."  (*Id.*)  Samuels explains that "[b]ecause the [English
Litigation] is ongoing and involves both Kuznetsov and Energokom, [he] can . . . state with a
high degree of certainty that delivery of U.S. process to Kuznetsov's lawyers in London will
effectuate actual notice to Kuznetsov of the U.S. proceedings against him."  (*Id.* ¶ 9.)

   Altman is the owner and manager of Bedford.  (Aff. of Alexander Altman ("Altman
Aff.") ¶ 1 (Dkt. No. 28-2).)  Altman states that he has known Kuznetsov for more than twenty
years in a personal and business capacity, during which time he has corresponded with
Kuznetsov via the Email Address.  (*Id.* ¶¶ 2–3.)  Like Kuznetsov, Altman has a "Gmail based
email."  (*Id.* ¶ 4.)  Altman explains that "[a]s a function of Gmail, any given user has an ability to

chat with other users of Gmail who are in his or her contact list." (*Id.* ¶ 5.) "The webmail Gmail client user interface displays a contact list of all Gmail chat users on the left hand side of the webmail user interface," and "next to each chat user there is an indicator showing whether the Gmail chat user is online, which is indicated by a green circle, away, which is indicated by an orange circle, unavailable, which is indicated by a red circle, or offline, which is indicated by a gray circle. (*Id.* ¶¶ 7–8.) Each chat user is associated with his or her Gmail email address. (*Id.* ¶ 9.) Altman avers that Kuznetsov has been, and remains, in his contact list for over six years and that he can see when and if Kuznetsov is online using his personal Gmail email account. (*Id.* ¶¶ 6, 11.) Attached to Altman's affidavit is a screenshot of Altman's personal computer taken on April 24, 2015, which he explains "show[s] that . . . Kuznetsov's email is active and online." (*Id.* ¶ 11.) Indeed, the circle by Kuznetsov's name in the screenshot is green. (*Id.* Ex. 1.)

## II.  Discussion

### A.  Applicable Law

Rule 4(f) governs service of process upon individuals in foreign countries and provides that service may be effected:

> (1) by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . .
>> (C) unless prohibited by the foreign country's law, by:
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or . . . .
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).  "Although Russia is a signatory to the Hague Convention, in 'July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and

commercial matters.'" *Ambriz Trading Corp. v. URALSIB Fin. Corp.*, No. 11-CV-4420, 2011
WL 5844115, at *6 (S.D.N.Y. Nov. 21, 2011) (quoting U.S. Department of State, Russia Judicial
Assistance, http://travel.state.gov/law/judicial/judicial_3831.html (last visited May 25, 2015));
*see also Arista Records LLC v. Media Servs. LLC*, No. 06-CV-15319, 2008 WL 563470, at *2
(S.D.N.Y. Feb. 25, 2008) (same).  Accordingly, "[b]ecause there is no reason to believe that
service would be effective if [a plaintiff] were required to serve [a defendant based in Russia] in
accordance with the Hague Convention procedures, substituted service pursuant to Rule 4(f)(3)
is appropriate." *Arista Records*, 2008 WL 563470, at *2 (footnotes omitted).

      "The decision whether to allow alternative methods of serving process under Rule 4(f)(3)
is committed to the sound discretion of the district court." *In GLC Life Tech Corp. Sec. Litig.*,
287 F.R.D. 262, 265 (S.D.N.Y. 2012) (internal quotation marks omitted).  "Service of process
under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among
several which enables service of process on an international defendant." *Madu, Edozie & Madu,
P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (internal quotation
marks omitted).  Accordingly, "under Rule 4(f)(3), a plaintiff is *not* required to attempt service
through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule
4(f)(3)." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (alteration and
internal quotation marks omitted).  "The only limitations on Rule 4(f)(3) are that the means of
service must be directed by the court and must not be prohibited by international agreement."
*Ehrenfeld v. Salim a Bin Mahfouz*, No. 04-CV-9641, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23,
2005).  Moreover, "[t]he proposed means of service must . . . comport with constitutional notions
of due process," *id.*, "which require 'notice reasonably calculated, under all the circumstances, to
apprise interested parties of the pendency of the action and afford them an opportunity to present

their objections,'" *Madu*, 265 F.R.D. at 115 (quoting *Luessenhop v. Clinton County*, 466 F.3d 259, 269 (2d Cir. 2006)); *see also NYKCool A.B. v. Pac. Int'l Servs., Inc.*, — F. Supp. 3d —, 2014 WL 3605632, at *4 (S.D.N.Y. July 15, 2014) (same).

B.   Application

According to the TPC, Kuznetsov resides in St. Petersburg, Russia.  (TPC ¶ 1.)  Kupfer's affidavit supports this allegation.  (Kupfer Aff. ¶ 4.)  As noted above, courts have found that in light of Russia's suspension of judicial cooperation with the United States, service would be ineffective pursuant to the procedures provided by the Hague Convention, and, therefore, service by alternate means under Fed. R. Civ. P. 4(f)(3) may be appropriate.  *See Ambriz Trading*, 2011 WL 5844115, at *6; *Arista Records*, 2008 WL 563470, at *2.  Bedford seeks to effectuate service by some or all of the following ways: (1) service on Kuznetsov's lawyers in the UK; (2) service by email to the Email Address; (3) service by mail to the Home Address and the Business Address; and (4) delivery by a courier to the Business Address.  (*See* Bedford Mem. 5–8.)  The Court discusses these methods in turn, though it notes that a court "need only select one reliable mechanism," *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 437 (S.D.N.Y. 2009), and that "no one form of substitute service is favored over any other," *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176 (2d Cir. 1979).

1.   Service on Defendant's Counsel in the United Kingdom

Bedford contends that "[s]ince [the English Litigation] is actively ongoing and Kuznetsov is the only defendant, . . . delivery of the summons and TPC to Kuznetsov's English attorneys by courier and by e-mail is reasonably calculated to provide him with actual notice of the proceedings here."  (Bedford Mem. 5 (citation omitted).)

9

"[A] party seeking leave to serve an individual by counsel must show adequate communication between the individual and the attorney."  *In GLG Tech Corp. Sec. Litig.*, 287 F.R.D. at 267; *see also Madu*, 265 F.R.D. at 116 ("District courts have not authorized service on a lawyer unless there has been adequate communication between the foreign defendant and the lawyer.").  Courts have approved service on a lawyer where the lawyer has filed a notice of appearance in the relevant action because the lawyer was in a position to provide the defendant with a copy of the service papers.  *See Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (authorizing service on the plaintiff's New York counsel that made a special appearance in the case contesting service); *United States v. Machat*, No. 08-CV-7936, 2009 WL 3029303, at *4 (S.D.N.Y. Sept. 21, 2009) (approving service by email and on the defendant's attorney where the attorney had appeared for the defendant in matter, "and therefore must [have] know[n] how to contact [the defendant] to notify her of service"); *RSM Prod. Corp. v. Fridman* ("*Fridman II*"), No. 06-CV-11512, 2007 WL 2295907, at *4–6 (S.D.N.Y. Aug. 10, 2007) (holding that service on a foreign defendant's lawyer in the United States was appropriate because of the lawyer's notice of appearance in the relevant litigation and longstanding relationship with the defendant in the previous actions).  Moreover, at least one court in this district has approved service on a defendant's attorneys in both the United Kingdom and the United States because "[b]oth sets of attorneys must [have been] in communication with [the] [d]efendant in relation to . . . pending legal proceedings . . . and [would] know how to locate [the] [d]efendant."  *Ehrenfeld*, 2005 WL 696769, at *3.

The courts to have approved service on a foreign defendant's counsel, however, have noted that the relevant attorneys were unlikely to disregard receipt of service of process because they were already representing the defendant in the relevant cases, otherwise had knowledge of

the underlying facts of the case in which service was attempted, *see Machat*, 2009 WL 3029303, at *4 ("Given that [the attorney] is already representing [the defendant], [the attorney] is not likely to disregard receipt of service of process."); *KPN B.V. v. Corcyra D.O.O.*, No. 08-CV-1549, 2009 WL 690119, at *2 (S.D.N.Y. Mar. 16, 2009) ("[B]ecause [the attorney] is aware of the facts underlying this action and has already made limited appearances on behalf of [the defendant], he will not be likely to disregard notice of the action."); *Ehrenfeld*, 2005 WL 696769, at *3 (explaining that the defendant's "counsel in the United Kingdom [was] aware of the facts underlying th[e] suit and therefore [would] not be likely to disregard notice of the suit"), or had a special relationship with the defendant, *see In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 267–68 (holding service on a corporation's counsel was "certain to apprise [the chairman and chief executive officer of the corporation] of the pendency of th[e] action" against the chairman); *Fridman II*, 2007 WL 2295907, at *4–7 (holding that service on a foreign defendant's lawyer in the United States was appropriate because of the lawyer's notice of appearance in the relevant litigation and longstanding relationship with the defendant in previous actions); *cf. Kuklachev v. Gelfman*, No. 08-CV-2214, 2008 WL 5068860, at *4 (E.D.N.Y. Nov. 24, 2008) (refusing to allow service on an attorney where the attorney did not represent the defendants and the plaintiffs did not indicate that the attorney had "any particular relationship to [the] defendants that would make him likely to apprise [the] defendants of the action").

Here, according to Kupfer, the English Litigation is ongoing and, therefore, Kuznetsov's attorneys at Simmons & Simmons are likely in regular contact with Kuznetsov.  (Kupfer Aff. ¶¶ 7–8.)  Moreover, Samuels, the plaintiff's counsel in the underlying English Litigation, states that "[b]ecause the [English Litigation] is ongoing and involves both Kuznetsov and Energokom, [he] can state with a high degree of certainty that delivery of U.S. process to Kuznetsov's

lawyers in London will effectuate actual notice to Kuznetsov of the U.S. proceedings against him." (Samuels Aff. ¶ 9.)  However, the fact that these attorneys represent Kuznetsov in a pending litigation that is not clearly related to the instant Action is insufficient, without more, to show that Kuznetsov would receive adequate notice of this suit against him.  In contrast to the circumstances where courts have approved of service on a foreign defendant's attorney, here there is nothing to ensure that the attorneys at Simmons & Simmons would apprise Kuznetsov of the instant Action.  Specifically, the attorneys at Simmons & Simmons have not appeared on behalf of Kuznetsov in this case, nor has Bedford suggested that the attorneys have any knowledge of the underlying facts in this case.  Moreover, Bedford has failed to make any showing that a special relationship exists between Kuznetsov and the attorneys at Simmons & Simmons beyond their representation of him in the English Litigation.  Accordingly, even accepting Kupfer's claim that attorneys in the United Kingdom represent Kuznetsov in an ongoing litigation, there is no indication that these attorneys would apprise Kuznetsov of the instant Action.  The Court declines, then, to hold that service on Kuznetsov's counsel in the United Kingdom is an adequate means of service under Rule 4(f)(3).

        2.  <u>Service by Mail</u>

      Next, Bedford proposes service by mail to the Home Address and the Business Address. (Bedford Mem. 6–7.)  Article 10 of The Hague Convention "permits service through the mailing of judicial documents, by postal channels, directly to persons abroad, absent any objection by the country in which the defendant is located." *RSM Prod. Corp. v. Fridman* ("*Fridman I*"), No. 06-CV-11512, 2007 WL 1515068, at *2 (S.D.N.Y. May 24, 2007) (internal quotation marks omitted).  As noted above, "Russia, although a signatory to the Hague Convention[,] . . . has suspended cooperation with the United States." *Kuklachev*, 2008 WL 5068860, at *2 n.2.

Furthermore, before this unilateral suspension, Russia objected to Article 10 of the Hague Convention, and "Russia's failure to abide by the Convention, . . . does not change the fact that Russia does not agree to service by mail." *Id.*; *see also Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-CV-9258, 2014 WL 1331046, at *9 (S.D.N.Y. Mar. 31, 2014) (same). "District courts have found service through [the mail] unavailable to serve defendants who reside in foreign countries that have acceded to the Hague Service Convention with an objection to Article 10." *Fridman I*, 2007 WL 1515068, at *2.  Accordingly, "the Hague Service Convention, if it is in force between the United States and the Russian Federation, prohibits service through certified international mail or Federal Express International Priority mail on individuals residing in the Russian Federation due to that country's objection to Article 10 of the convention." *Id.*  (collecting cases and rejecting the plaintiff's proposal to serve the defendant by certified international mail or Federal Express International Priority Mail to his Moscow business address); *see also Bidonthecity.com*, 2014 WL 1331046, at *9 (explaining that "[t]he Russian Federation is a signatory to the Hague Convention, but objects to all methods of service in Article 10, including the freedom to send judicial documents, by postal channels, directly to persons abroad" and holding that "despite Russia's noncompliance with the Hague Convention, [the] [p]laintiffs' service by mail still [did] not suffice as adequate service" (internal quotation marks omitted)); *cf. Advanced Aerofoil Techs, AG v. Todaro*, No. 11-CV-9505, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) (rejecting the plaintiffs' request for an order allowing them to serve documents by international courier to Swiss and German defendants because "Switzerland and Germany have explicitly objected to service through postal channels"). Bedford's request to serve Kuznetsov by mail, is, therefore, denied.

3. <u>Service by Email</u>

Bedford also proposes to serve Kuznetsov by email.  (Bedford Mem. 6.)  To begin, the

Court notes that there is authority for the proposition that email is indistinguishable from "postal

channels" under Article 10 of the Hague Convention, and, therefore, if countries like Russia

object to service through postal channels, a defendant located in Russia cannot be served via

email.  *See e.g.*, *Agha v. Jacobs*, No. 07-CV-1800, 2008 WL 2051061, at *1–2 (N.D. Cal. May

13, 2008) (holding that service via email and fax qualified as "postal channels" and accordingly

declining to allow service on German defendants by these methods based on Germany's

objection to Article 10 of the Hague Convention); *see also Jian Zhang*, 293 F.R.D. at 515 n.2

(noting that "there is an argument that service by e-mail, fax, or publication . . . would run afoul

of the Hague Convention and thus be prohibited" but declining to address the issue).  Other

courts, however, have held that a country's objection to Article 10 does not preclude service by

email so long as the country has not explicitly objected to service by electronic means.  *See*

*F.T.C. v. Pecon Software Ltd.*, No. 12-CV-7186, et al., 2013 WL 4016272, at *5 (S.D.N.Y. Aug.

7, 2013) ("Numerous courts have held that service by email does not violate any international

agreement where the objections of the recipient nation are limited to those means enumerated in

Article 10."); *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011) (explaining that India's

"objection to service through postal channels does not amount to an express rejection of service

via electronic mail" and noting that "[s]everal other courts have found service by electronic mail

appropriate where a signatory nation has not objected to that specific means of service").

Because Russia has not explicitly objected to service by electronic means, *see Bidonthecity.com*

*LLC*, 2014 WL 1331046, at *9 (explaining that Russia has taken two actions with respect to the

Hague Convention, specifically that it has objected to Article 10, which prohibits service by

14

mail, and has refused to transmit service requests through its Central Authority), and the Court is not aware of any other international agreement or Russian law that prohibits service via email, *see Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, No. 13-CV-458, 2013 WL 1644808, at *1 (W.D. Pa. Apr. 16, 2013) (noting that the court was "not aware of any international agreement or Russian law that prohibits service by email"), the Court concludes that, as a general matter, service via email for a defendant residing in Russia may qualify as an alternative means of service under Rule 4(f)(3), *see Smith v. Wolf Performance Ammunition*, No. 13-CV-2223, 2015 WL 315891, at *2 (D. Nev. Jan. 23, 2015) (allowing the third-party plaintiff to effectuate service via email on a Russian company); *Microsoft Corp. v. Does 1-18*, No. 13-CV-139, 2014 WL 1338677, at *3 (E.D. Va. Apr. 2, 2014) (noting that "service by e-mail and internet publication to [a defendant residing in Russia was] authorized by Fed. R. Civ. P. 4(f)(3)"). Accordingly, the Court turns to whether such service is applicable under the circumstances here.

"Service by e-mail is appropriate under Rule 4(f)(3) in some circumstances . . . [and] [a]s a general matter, 'in those cases where service by email has been judicially approved, the movant supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'" *NYKCool A.B.*, 2014 WL 3605632, at *4 (quoting *Fortunato v. Chase Bank USA, N.A.*, No. 11-CV-6608, 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012)); *see also Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988, 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007) ("[F]ederal courts have approved email service of process as an appropriate means under Rule 4 in proper circumstances."). For example, "courts have upheld service via e-mail [in] . . . cases [that] involved email addresses undisputedly connected to the defendants and that the defendants used for business purposes." *Ehrenfeld*, 2005 WL 696769, at *3; *see also NYKCool*, 2014 WL 3605632, at *4 (same); *Philip*

*Morris USA*, 2007 WL 725412, at *3 (rejecting the defendants' objection to service via email where the plaintiff "showed that [the] defendants conduct[ed] business extensively, if not exclusively, through their Internet websites and correspond[ed] regularly with customers via email"). In contrast, courts have held that serving a defendant via email addresses on its company's website is insufficient to provide a defendant with notice, absent evidence that a defendant "ever used or checked th[e] email address, for business purposes or otherwise, or that an e-mail sent to th[e] address would have been brought to [the defendant's] attention." *NYKCool*, 2014 WL 3605632, at *4; *see also Ehrenfeld*, 2005 WL 696769, at *3 (declining to authorize service via an email address that was "apparently only used as an informal means of accepting requests for information rather than for receiving important business communications," and where the plaintiff "provided no information that would [have led] the [c]ourt to conclude that [the] [d]efendant maintain[ed] the website, monitor[ed] the email address, or would be likely to receive information transmitted to the email address").

Here, the QB Order authorizing service on Kuznetsov, in part, by the Email Address and Samuel's statement that service of the QB Order was effective to provide Kuznetsov with notice of the English Litigation, (Samuels Aff. ¶ 8), lends support to a finding that Kuznetsov will receive the Summons and TPC at the Email Address. Nevertheless, while the Court is willing accept for the purpose of the instant Motion that Kuznetsov received notice of the English Litigation, there is no way for the Court to determine if Kuznetsov received notice of the English Litigation via the Email Address or because of the court-ordered delivery of the legal documents by courier. Indeed, "[t]he bare assertion that [serving a defendant via email] has been tried in another context does not mean that it is valid for [serving the defendant in this case]." *SEC v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 399 (S.D.N.Y. 2014) (rejecting the

16

SEC's argument that service by email was an appropriate method of service because counsel in another case "recently attempted to serve [the defendant] by th[e] very approach in another action"). Accordingly, the mere fact that Kuznetsov received notice of the English Litigation through a combination of both the Email Address and the efforts of a courier is insufficient, without more, to show that Kuznetsov will receive service via the Email Address.

Bedford's showing, however, does not end with the representation that service of the QB Order was successful. Rather, Kupfer states that the Email Address is Kuznetsov's business email address and that he has "communicated with Kuznetsov on business matters at [this] address." (Kupfer Aff. ¶ 4.) Samuels avers that he "can attest that the [Email Address] was active and in use by Kuznetsov when notice of demand was sent to Kuznetsov at that address by [Samuels] at various times in late 2012 and early 2013." (Samuels Aff. ¶ 5.) Samuels states that he "never received notice that any of [his] emails had failed to be delivered and . . . when [he] first emailed Kuznetsov at the [Email Address] at the end of November 2012[,] raising queries about his conduct in relation to Energokom[,] [he] received a reply by email addressed to [Samuels] from [Kuznetsov], signed by his lawyer on his behalf." (*Id.*) Finally, Altman explains that Kuznetsov has been listed in his Gmail contact list for six years and he can see when Kuznetsov is online, using the Gmail interface. (Altman Aff. ¶¶ 6, 11.) The screenshot of Altman's computer shows that Kuznetsov was online on April 24, 2015. (*Id.* Ex. 1.) The Court finds that because Bedford has presented evidence that Kuznetsov has used the Email Address for business purposes and there is evidence that Kuznetsov has accessed his Gmail account as recently as April 24, 2015, Kuznetsov is likely to receive service via the Email Address. *See Pecon Software Ltd.*, 2013 WL 4016272, at *7 (finding that the plaintiff had demonstrated a high likelihood that corporate defendants would receive service at the email addresses that were "used

in relation to the [underlying] scheme at issue [in the case] by th[e] defendants"); *F.T.C. v. PCCare247 Inc.*, No. 12-CV-7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (approving service by email where "[t]he email addresses specified for [the defendants] were demonstrably used for various tasks involved in the alleged scheme, such as setting up merchant[] banking accounts and advertising accounts" and "the [c]ourt ha[d] independent confirmation that at least one of th[e] email accounts was recently in use by the specified defendant . . . to email the [c]ourt on four occasions"); *Prediction Co. v. Rajgarhia*, No. 09-CV-7459, 2010 WL 1050307, at *2 & n.13 (S.D.N.Y. Mar. 22, 2010) (finding that it was "reasonably likely that [the defendant] [would] receive the summons and complaint via a message to his recently-used email address" based on an affidavit "detailing [the plaintiff's] use of a Gmail account"); *Machat*, 2009 WL 3029303, at *4 (approving service by email and service on the defendant's attorney where "[t]he [g]overnment ha[d] successfully corresponded with [the defendant] by the email address that she provided" and the defendant "received and acknowledged actual notice of [the relevant] suit from the [g]overnment through th[e] email address"); *S.E.C. v. Lines*, No. 07-CV-11387, 2009 WL 2431976, at *2 (S.D.N.Y. Aug. 7, 2009) (permitting service by email where the plaintiff demonstrated that the defendant had "used his email address as recently as last year"); *cf. U.S. S.E.C. v. China Intelligent Lighting & Elecs. Inc.*, No. 13-CV-5079, 2014 WL 338817, at *2 (S.D.N.Y. Jan. 30, 2014) (rejecting, without prejudice, the plaintiff's proposal to serve the defendant by email where the "only evidence [the plaintiff] present[ed] with respect to the first email address [was] an e-mail copied to that address" without anything in the email that linked the email address to the defendant and, with respect to the second email address, the plaintiff "presented a spreadsheet appearing to list contact information for various executives" associated with the defendant's company but did "not include a date or any other information from which

the [c]ourt could infer that [the defendant] continue[d] to use the relevant e-mail addresses" at

that time (internal quotation marks omitted)); *Pecon Software Ltd.*, 2013 WL 4016272, at *7

(declining to authorize service via email addresses "without prejudice to renewal if the FTC

[could] submit documentation supporting its assertion that [the defendant] [could] be reached at

the proposed email addresses" where "the FTC provide[d] no citation to the record containing a

copy of the email that [the defendant] sent, and none of the three email addresses proposed

[were] found at the record citations provided in the FTC's brief").

   For the same reasons, service via the Email Address comports with due process because

it is "reasonably calculated, under all the circumstances, to apprise [Kuznetsov] of the pendency

of the action and afford [him] an opportunity to present [his] objections." *Madu*, 265 F.R.D. at

115 (quoting *Luessenhop*, 466 F.3d at 269); *see also Pecon Software Ltd.*, 2013 WL 4016272, at

*5 ("Service by email alone comports with due process where a plaintiff demonstrates that the

email is likely to reach the defendant."); *Henry F. Teichmann, Inc.*, 2013 WL 1644808, at *2

(noting that "alternate service via email . . . comports with constitutional notions of due process

because the method of service in [the] case provide[d] notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections" (internal quotation marks omitted)).  Therefore, service

via the Email Address is appropriate under these circumstances.

   4.   Service by Courier

   Finally, Bedford proposes service by courier delivery at Kuznetsov's business address.

(Bedford Mem. 7.)  Courts have held, however, that service of documents by international

courier constitutes service through "postal channels," and accordingly this method of service is

insufficient in light of Russia's objection to Article 10, as discussed above.  *See Advanced*

*Aerofoil Techs.*, 2012 WL 299959, at *2 (rejecting the plaintiffs' request for an order allowing them to serve the defendants by international courier because "both Switzerland and Germany have explicitly objected to service through postal channels"); *Casio Computer Co., Ltd. v. Sayo*, No. 98-CV-3772, 2000 WL 1877516, at *28 (S.D.N.Y. Oct. 13, 2000) (finding that the defendant did not appropriately serve the defendant under the Hague Convention when the defendant "utilized service by overnight courier, and Japan does not permit service of process to be made by postal channels").  Accordingly, the Court does not authorize service by international courier.

### III. Conclusion

For the foregoing reasons, Bedford's Motion is granted.  Bedford is authorized, pursuant to Rule 4(f)(3), to effectuate service of the Third-Party Summons and Complaint on Kuznetsov without the necessity of translation into the Russian language by email upon Kuznetsov at the Email Address, specifically kuzniv@gmail.com.  Kuznetsov shall have 30 days after the filing of due proof of such service with the Clerk of the Court to respond to the Third-Party Summons and Complaint.  The Clerk of the Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 22.)

SO ORDERED.

DATED:      May 29 , 2015
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE