UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMTO, LLC,

                    Plaintiff,

        v.

BEDFORD ASSET MANAGEMENT, LLC,

                    Defendant.

---

BEDFORD ASSET MANAGEMENT, LLC,

                    Third-Party Plaintiff,
            v.

ENERGOKOM, LLC and IVAN
KUZNETSOV,

                    Third-Party Defendants.

---

Case No. 14-CV-9913 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>

Candice D. Aiken, Esq.
Bronx, NY
*Counsel for Plaintiff*

Daniel F. McGuire, Esq.
Harold F. McGuire, Jr., Esq.
D.F. McGuire & Associates, LLC
White Plains, NY
*Counsel for Defendant, Third-Party Plaintiff*

Kenneth J. Katz, Esq.
Katz Melinger PLLC
New York, NY
*Counsel for Third-Party Defendants*


KENNETH M. KARAS, United States District Judge:

Plaintiff AMTO, LLC ("Plaintiff" or "AMTO") brings this Action against Defendant Bedford Asset Management, LLC ("Defendant" or "Bedford"), seeking to collect on two unpaid loans on the grounds of breach of contract, account stated, and unjust enrichment. Bedford has asserted two counterclaims against AMTO, alleging a fraudulent conveyance, in violation of N.Y. Debt. and Cred. Law § 276, and a claim of civil conspiracy to commit tortious interference. Bedford also filed a Third-Party Complaint against Energokom, LLC ("Energokom") and Ivan Kuznetsov ("Kuznetsov" and, collectively with Energokom, "Third-Party Defendants"), alleging the same claims. Before the Court is AMTO's Motion for Partial Summary Judgment, seeking summary judgment on its First and Fourth Causes of Action, the breach of contract claims. (Notice of Mot. (Dkt. No. 42).) AMTO's Motion also seeks to strike Bedford's affirmative defenses and to dismiss Bedford's counterclaims. (*Id.*) Also before the Court is Third-Party Defendants' Motion To Dismiss Bedford's Third-Party Complaint in its entirety. (Notice of Mot. (Dkt. No. 39).) For the following reasons, Plaintiff's Motion for Summary Judgment is denied, without prejudice. Plaintiff's Motion To Strike Defendant's Affirmative Defenses is granted in part and denied in part, and its Motion To Dismiss Defendant's Counterclaims is granted. Finally, Third-Party Defendant's Motion to Dismiss the Third-Party Complaint is granted.

I.  Background

A.  The Facts

1.  The Parties

AMTO is a limited liability company existing under the Republic of Latvia.  (Def.'s Resp. to Pl.'s Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1") ¶ 1 (Dkt. No. 50).)[1]  Bedford is a domestic limited liability company organized under the laws of the State of Delaware.  (*Id.* ¶ 2.)  Energokom is a limited liability company existing under the Republic of Latvia.  (*Id.* ¶ 3.)  Bedford asserts that Kuznetsov, through intermediate entities, is the 100% owner of AMTO, (Decl. of Alexander Altman in Opp'n to Third-Party Def.'s Mot. To Dismiss ("Altman Decl. I") ¶ 3 (Dkt. No. 46)), and that Kuznetsov controls Energokom through indirect majority ownership, (*id.* ¶ 2).

2.  The Bedford Loans

On or about May 29, 2009, Energokom loaned Bedford $100,000 (the "$100,000 Loan") pursuant to a loan agreement.  (Def.'s 56.1 ¶ 4; *see also* Aff. of Leonid Krizhanovsky in Supp. of Pl.'s Mot. ("Krizhanovsky Aff.") ¶ 4 (Dkt. No. 43); *id.* at Ex. 2.)  The agreement required that the $100,000 Loan be repaid by May 28, 2010.  (Krizhanovsky Aff. Ex. 2, at 1.)  Bedford entered into a subsequent agreement with Energokom dated May 28, 2010 regarding the $100,000 Loan, (Def.'s 56.1 ¶ 5), which extended the repayment date for the $100,000 Loan to

---

[1] Many of the facts underlying the relevant loans are not in dispute.  The Court draws from the Parties' various filings and notes where, if at all, there is a dispute among the Parties.

May 28, 2012, (Krizhanovsky Aff. Ex. 3).  Bedford accepted the $100,000 Loan but has not repaid it.  (Def.'s 56.1 ¶ 6.)

On or about October 20, 2009, Energokom loaned Bedford an additional $54,000 (the "$54,000 Loan" and, collectively with the $100,000 Loan, the "Bedford Loans"), pursuant to a loan agreement.  (Def.'s 56.1 ¶ 7; *see also* Krizhanovsky Aff. ¶ 9; *id.* at Ex. 5.)  The agreement required that the $54,000 Loan be repaid by December 31, 2010.  (Krizhanovsky Aff. Ex. 5, at 1.)  Bedford entered into a subsequent agreement with Energokom dated December 31, 2010 regarding the $54,000 Loan, (Def.'s 56.1 ¶ 8), which extended the repayment date for the $54,000 Loan to December 31, 2012, (Krizhanovsky Aff. Ex. 6).  Bedford accepted the $54,000 Loan but has not repaid it.  (Def.'s 56.1 ¶ 9.)

The loan agreements underlying each of the Bedford Loans contained the following section, entitled "Governing Law":

> This Agreement will be construed in accordance with and governed by the Latvian law and the competent courts of Latvian Republic shall have exclusive jurisdiction to hear all matters arising from or in connection with this Agreement.

(*See* Krizhanovsky Aff. Exs. 2, 5; *see also* Altman Decl. I ¶ 5.)

Energokom demanded payment of the Bedford Loans by letter dated July 13, 2012. (Decl. of Leonid Krizhanovsky ("Krizhanovsky Decl.") ¶ 8 (Dkt. No. 53); Decl. of Alexander Altman in Opp'n to Pl.'s Mot. for Summ. J. ("Altman Decl. II") ¶ 13 (Dkt. No. 48); *id.* at Ex. D.)[2]  AMTO and Third-Party Defendants assert that just over a month later, on August 20, 2012,

---

[2] Leonid Krizhanovsky, who is an officer and member of the boards of directors of both AMTO and Energokom, (*see* Krizhanovsky Aff. ¶ 1), submitted papers both in support of AMTO's Motion (*see* Krizhanovsky Aff.), and Third-Party Defendants' Motion, (*see*

Energokom assigned its rights under the Bedford Loans to AMTO.  (*See* Krizhanovsky Aff. ¶¶ 6, 11; *id.* at Ex. 4; *see also* Krizhanovsky Decl. ¶ 9; *id.* at Ex. 5.)  Bedford denies that Energokom "effectively assigned to Plaintiff any of its rights" with respect to the Bedford Loans.  (Answer with Counterclaims ("Answer") ¶¶ 8, 25 (Dkt. No. 4).)  Specifically, Bedford's owner, Alexander Altman ("Altman"), contends that the assignment "occurred without fair consideration and was not in the regular course of Energokom's business."  (Altman Decl. II ¶ 11.)  Bedford further questions whether the assignment was valid under Latvian law.  (Def.'s 56.1 ¶ 13; Decl. of Daniel F. McGuire in Opp'n to (1) Pl.'s Mots. for Summ. J. and Dismissal of Defenses and Countercls., and (2) Third-Party Def.'s Mot. for Dismissal of Third-Party Claims ("McGuire Decl.") ¶ 10 (Dkt. No. 49); *see also id.* at Ex. 3.)

AMTO and Third-Party Defendants claim that on August 29, 2012, AMTO sent a letter to Bedford informing it of the assignment of the Bedford Loans from Energokom to AMTO.  (*See* Krizhanovsky Decl. ¶ 10; *id.* at Ex. 6.)[3]  Altman vigorously disputes the authenticity of the letter, insisting that he never received, and has never seen, it.  (Sur-Reply Decl. of Alexander Altman in Opp'n to Third-Party Defs.' Mot. To Dismiss ("Altman Sur-Reply Decl.") ¶¶ 4–6 (Dkt. No. 61).)

---

Krizhanovsky Decl.).

[3] The purported August 29, 2012 letter first appeared in this proceeding as part of AMTO's and Third-Party Defendants' reply papers.

3.  The Tomkins Loan

On or around February 10, 2010, non-party Tomkins Ltd. ("Tomkins") loaned $300,000 to Energokom (the "Tomkins Loan"), pursuant to a loan agreement.  (Krizhanovsky Decl. ¶ 5; *id.* at Ex. 3; Altman Decl. I ¶ 6; Answer ¶ 44.)  The loan agreement contained the following section, entitled "Governing Law":

> This Agreement will be construed in accordance with and governed by English law and the High Court in London shall have exclusive jurisdiction to hear all matters arising from or in connection with this Agreement.

(Krizhanovsky Decl. ¶ 5; *id.* at Ex. 3.)

On or around June 15, 2012, Tomkins assigned its rights under the Tomkins Loan to UNIX, s.r.o. ("UNIX").  (Krizhanovsky Decl. ¶ 7; Altman Decl. I ¶ 7.)  Altman asserts that both he and UNIX are "well known to Kuznetsov and Energokom through prior business dealings," and that he informed Kuznetsov of the assignment of the Tomkins Loan at or around the time that the assignment occurred.  (Altman Decl. I ¶¶ 8–9.)  By letter dated September 6, 2012, UNIX sent a demand letter to Energokom.  (*Id.* ¶ 9.)  The letter is entitled "1st reminder" and informs Energokom that UNIX acquired the Tomkins Loan.  (*Id.* at Ex. A.)  On October 1, 2012, Altman caused Bedford to acquire the Tomkins Loan from UNIX "for fair value."  (Altman Decl. I ¶ 10; *see also* Krizhanovsky Decl. ¶ 13.)[4]  On October 15, 2012, Bedford notified

---

[4] Although Krizhanovsky's submission in support of Third-Party Defendants' Motion To Dismiss states that "[i]n or around October 2012, Bedford received the rights under the Tomkins Loan from UNIX," (Krizhanovsky Decl. ¶ 13), and AMTO's attorney "incorporates the Declaration of Leonid Krizhanovsky . . . by referernce [sic]" into her affirmation in further support of AMTO's Motion, (Aff'n of Candice D. Aiken in Further Supp. of Pl.'s Mots. ("Aiken Aff'n") ¶ 3 (Dkt. No. 57)), she also asserts that "Bedford has failed to establish that it is an assignee" of the Tomkins Loan because Bedford "has not presented the purported Tomkins Loan

Energokom that Bedford had acquired the rights under the Tomkins Loan from UNIX.  (Altman Decl. II ¶ 14; *id.* at Ex. E; Krizhanovsky Decl. ¶¶ 15–16.)

### 4.  Prior Proceedings in New York and Latvia

On October 2, 2012, AMTO instituted an action against Bedford in New York State Supreme Court to collect on the Bedford Loans.  (Altman Decl. I ¶ 11; Krizhanovsky Decl. ¶ 11; *id.* at Ex. 7.)  The complaint was signed and verified by AMTO's counsel on September 26, 2012.  (Krizhanovsky Decl Ex. 7, at 4.)  Third-Party Defendants aver that at the time the original complaint was filed, Kuznetsov and Energokom were "entirely unaware that Bedford intended to acquire the rights to the Tomkins Loan from UNIX."  (Krizhanovsky Decl. ¶ 14; Decl. of Ivan Kuznetsov ("Kuznetsov Decl.") ¶ 2 (Dkt. No. 52).)

AMTO served Bedford with process through the New York Secretary of State on December 24, 2012.  (Altman Decl. I ¶ 12; *id.* at Ex. C.)[5]  Relying on the Latvian choice-of-forum clauses discussed above, Bedford moved to dismiss AMTO's claims on the basis of forum non conveniens and to have the case transferred to Latvian courts.  (McGuire Decl. ¶ 3.)  On October 7, 2013, Justice Robert DiBella granted Bedford's motion and dismissed the complaint without prejudice, providing AMTO the opportunity to re-commence the action if the Latvian court dismissed the case for lack of jurisdiction.  (*Id.* at Ex. 1.)

---

assignment," (*id.* ¶ 15).

[5] Because Altman disputes having received the alleged August 29, 2012 letter informing Bedford of the assignment of the Bedford Loans from Energokom to AMTO, Altman stresses that it was through this service of process on December 24, 2012 that Bedford first received notice of the assignment.  (Altman Decl. ¶¶ 12, 17; Altman Sur-Reply Decl. ¶ 5.)

On July 7, 2014, a Latvian court issued a decision that apparently refused to accept AMTO's claims against Bedford for adjudication because "the case does not fall within the jurisdiction of th[e] court" and appears to have held that "the claim should be brought in the competent court of the United States of America." (McGuire Decl. ¶¶ 6–7; *id.* at Ex. 2.) Bedford's attorney, Daniel McGuire, ("McGuire"), asserts that Bedford never appeared in the Latvian court and that the proceedings there appear to have been entirely ex parte, as Bedford never received copies of any of the papers. (McGuire Decl. ¶ 5.) McGuire also avers that AMTO's current counsel provided a copy of the Latvian opinion to his firm well after the allotted time for an appeal of the decision had passed. (*Id.* ¶ 6.)[6]

### B.  Procedural History

AMTO brought the instant Action in New York State Supreme Court, Westchester County, by complaint dated October 6, 2014. (*See* Notice of Removal of Civil Action ("Notice of Removal") Ex. 2 ("Complaint") (Dkt. No. 1).) The Complaint seeks to collect on the Bedford Loans on the grounds of breach of contract, account stated, and unjust enrichment. (*Id.*) Bedford removed the action to this Court on December 16, 2014. (*See* Notice of Removal.) On December 22, 2014, Bedford filed its Answer, in which it asserted a number of affirmative defenses and two counterclaims, one for fraudulent conveyance, in violation of N.Y. Debt. and

---

[6] While AMTO's counsel does address McGuire's statements regarding the Latvian proceeding in her reply affirmation, she does not dispute that Bedford did not participate at all in the proceeding. (*See* Aiken Aff'n ¶¶ 18–24.) Instead, she notes that neither herself nor McGuire served as Latvian counsel for their respective clients, that Bedford's alleged ignorance of the Latvian proceeding is a failure of Bedford and its Latvian counsel, and that whatever happened in the Latvian proceeding is "not an issue for this Court" and is "irrelevant here." (*Id.* ¶¶ 18–19.)

Cred. Law § 276, and another for civil conspiracy to commit tortious interference with a contract, (*see* Answer ¶¶ 38–63), and a third-party complaint ("Third-Party Complaint") against Energokom and Kuznetsov bringing the same claims as the counterclaims brought against AMTO, (*see* Third-Party Complaint (Dkt. No. 5)).[7]

Pursuant to a Scheduling Order dated June 8, 2015, (Dkt. No. 32), AMTO filed its Motion For Partial Summary Judgment, To Strike Bedford's Affirmative Defenses, and To Dismiss Bedford's Counterclaims and accompanying papers, (Dkt. Nos. 42–44), on July 21, 2015.  Third-Party Defendants filed their Motion to Dismiss the Third-Party Complaint and accompanying papers, (Dkt. Nos. 39–41), on July 20, 2015.  Bedford filed its Memorandum of Law in Opposition to the Motions and accompanying papers on August 31, 2015.  (Dkt. Nos. 45–50.)  AMTO and Third-Party Defendants filed their Reply Memoranda of Law and accompanying papers on September 15, 2015.  (Dkt. Nos. 56–57, 51–55.)  Bedford sought, and was granted, leave to file a sur-reply affidavit.  (Dkt. No. 60.)  Bedford filed this affidavit on September 30, 2015.  (Dkt. No. 61.)  The Court heard oral argument on January 8, 2016.  (Dkt. (minute entry for Jan. 8, 2016).)

## II.  Discussion

### A.  Forum Selection Clause

As noted above, the Tomkins Loan agreement contains the following "Governing Law" clause:

---

[7] On May 29, 2015, the Court issued an Order granting Bedford's Motion to Serve Kuznetsov Through Alternative Means, allowing Bedford to serve Kuznetsov by email.  (*See* Dkt. No. 29.)

> This Agreement will be construed in accordance with and governed by English law and the High Court in London shall have exclusive jurisdiction to hear all matters arising from or in connection with this Agreement.

(Krizhanovsky Decl. ¶ 5; *id.* at Ex. 3.)  The Parties disagree as to the effect of this provision on Bedford's affirmative defenses, counterclaims, and third-party claims.  AMTO and Third-Party Defendants contend that pursuant to the clause, Bedford's counterclaims and third-party claims—due to their reliance on the existence and enforceability of the Tomkins Loan—must be dismissed because the High Court in London has exclusive jurisdiction over the claims.  (*See* Pl.'s Mem. of Law in Supp. of Mot. ("Pl.'s Summ. J. Mem.") 10–12 (Dkt. No. 44); Third-Party Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("TPD Mem.") 10–13 (Dkt. No. 40).)  AMTO further argues that Bedford's affirmative defenses relying on setoff and fraudulent conveyance theories also must be dismissed on the same ground.  (Pl.'s Summ. J. Mem. 8.)  Bedford takes a more narrow view of the clause, and draws a distinction between a straightforward enforcement action—which Bedford does not undertake and which it essentially concedes would be subject to the clause—and the current situation, where its third-party claims "sound[] exclusively in tort," (Mem. of Law in Opp'n to Third-Party Defs.' Mot. To Dismiss Third-Party Compl. ("Def.'s MTD Opp'n") 20 (Dkt. No. 45); *see also generally id.* at 19–24), and the "thrust of the defenses and counterclaims is that Energokom fraudulently conveyed the Bedford Loans to AMTO," and that AMTO and Third-Party Defendants conspired tortiously to deprive Bedford of its rights of setoff, (Mem. of Law in Opp'n to Pl.'s Mots. for Summ. J. and Dismissal of Defenses and Countercls. ("Def.'s Summ. J. Opp'n") 12 (Dkt. No. 47) (emphasis omitted); *see also generally id.* at 10–15).

1.  Applicable Law

"The [Supreme] Court [has] held that generally 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens.'" *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) (italics omitted) (quoting *Atlantic Marine Constr. Co. v. U.S. District Ct. for the W. District of Tex.*, 134 S. Ct. 568, 580 (2013)); *see also Starkey v. G Adventures, Inc.*, 796 F.3d 193, 196 (2d Cir. 2015) (same); *Atomi, Inc. v. RCA Trademark Mgmt., S.A.S.*, No. 14-CV-7456, 2015 WL 1433229, at *1 (S.D.N.Y. Mar. 30, 2015) (same).[8]  This Court must employ a four-part analysis to determine whether a claim should be dismissed based on a forum selection clause.  The Court should ask: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any [] dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez*, 740 F.3d at 217 (first alteration in original) (emphasis and internal quotation marks omitted); *see also Starkey*, 796 F.3d at 196 (same).  "If the forum clause was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute, it is

_____

[8] AMTO and Third-Party Defendants initially sought to enforce the forum-selection clause under Federal Rule of Civil Procedure 12(b)(3), and not based on the doctrine of forum non conveniens.  Because the Supreme Court's decision in *Atlantic Marine* merely clarified the procedural vehicle through which forum selection clauses are enforced and did not significantly alter the substantive analysis of the clauses, the Court will deem AMTO's and Third-Party Defendants' motions to dismiss on the basis of the forum selection clause as proceeding under the forum non conveniens doctrine.  *See Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-CV-8089, 2014 WL 1116875, at *2 n.3 (S.D.N.Y. Mar. 18, 2014) (construing the defendants' Rule 12(b)(3) motion to dismiss based on the forum selection clause under the doctrine of forum non

11

presumptively enforceable." *Martinez*, 740 F.3d at 217 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)); *see also ErGo Media Capital, LLC v. Bluemner*, No. 15-CV-1377, 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015) (same); *Arial Techs., LLC v. Aerophile S.A.*, No. 14-CV-4435, 2015 WL 1501115, at *2 (S.D.N.Y. Mar. 31, 2015) (same).  The resisting party can overcome the presumption "only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217 (internal quotation marks omitted); *see also Bluemner*, 2015 WL 6442252, at *2 (same); *Atomi*, 2015 WL 1433229, at *2 (same).

Where a contract contains a choice of law clause in addition to a forum selection clause, the court generally must apply the law selected in the choice of law clause to the "interpretive questions posed by parts two and three of the four-part framework," while applying federal law to determine whether the clause is enforceable, "*i.e.*, step four in our analysis." *Martinez*, 740 F.3d at 217–18 (emphasis and internal quotation marks omitted); *see also Sick Kids (Need) Involved People of N.Y., Inc. v. 1561599 Ontario, Inc.*, No. 15-CV-3756, 2015 WL 5672042, at *1 n.2 (S.D.N.Y. Sept. 25, 2015) (noting that a choice of law clause providing that the agreement is governed by the law of Ontario, Canada controlled interpretation of the agreement's forum selection clause, while federal law "control[led] whether or not to enforce it"); *Arial Techs.*, 2015 WL 1501115, at *3 (explaining that "questions relating to the interpretation of the contract are properly resolved according to the law chosen by the parties," while "[s]tep four of the analysis, relating to the enforcement of the forum clause, is resolved according to federal law").

---

conveniens).

12

### 2.  Application

Bedford does not contest that the clause was reasonably communicated to it or that the clause is mandatory.  Accordingly, the Court focuses on steps three and four of the analysis described above.  *See Atomi*, 2015 WL 1433229, at *2 ("Because [the] [p]laintiff has not contested the first three factors, the forum selection clause is presumptively enforceable . . . .").

### a.  Whether the Claims and Parties Involved Are Subject to the Clause

As noted, this Court must apply the law contractually chosen by the parties to the interpretive question of whether the claims and parties involved are subject to the clause.  *See Martinez*, 740 F.3d at 217–18.  The "Governing Law" clause of the Tomkins Loan agreement states that the agreement is to "be construed in accordance with and governed by English law." (Krizhanovsky Decl. ¶ 5; *id.* at Ex. 3.)  Accordingly, the Court applies English law to the question of whether Bedford's defenses, counterclaims, and third-party claims are subject to the forum selection clause.

Bedford stresses that its defenses, counterclaims, and third-party claims do not "in any meaningful sense 'arise from' . . . the Tomkins [L]oan agreement," and that the defenses' and claims' "connection with" the Tomkins Loan is "secondary and relatively attenuated."  (Def.'s Summ. J. Opp'n 11–12; Def.'s MTD Opp'n 20.)  Bedford does not cite to any English authority in support of its contentions.  Instead, it provides its unsupported "suggest[ion]" that "the High Court in London would itself in all likelihood treat this matter as one not 'arising from' the Tomkins Loan, since none of the main elements of the third-party claims have much to do with the Tomkins Loan."  (Def.'s MTD Opp'n 23.)  For its part, AMTO also fails to cite any English

13

authority addressing this question.  Third-Party Defendants, in their reply brief, are the first to expressly cite to English authority, which they do in support of their argument that "English Courts are likely to uphold the forum selection clause."  (*See* Third-Party Defs.' Mem. of Law in Further Supp. of its Mot. To Dismiss ("TPD Reply Mem.") 9–10 (Dkt. No. 55).)[9]

Two recent cases from the Second Circuit provide a helpful exploration of English law on the subject of the scope of forum selection clauses.  First, the Second Circuit considered the issue in *Martinez*.  In that case, the plaintiff brought a claim against his former employer alleging that his termination constituted discrimination in violation of the Americans with Disabilities Act, as well as state and local laws.  *Martinez*, 740 F.3d at 214.  The defendants moved to dismiss the action on the basis of a clause contained in the plaintiff's employment contract, which specified

---

[9] "Just as parties are free, via a choice-of-law clause, to select the law to govern the interpretation of a forum selection clause, nothing prevents the parties in litigation from choosing not to rely on any distinctive features of the selected law and instead to apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause." *Martinez*, 740 F.3d at 223 (alterations and internal quotation marks omitted); *see also Arial Techs.*, 2015 WL 1501115, at *3 (applying general contract law principles and federal precedent to analyze scope of a forum selection clause where the defendants cited only federal law and the plaintiff cited no law on the issue).  While AMTO and Bedford ignore English law on this point entirely, Third-Party Defendants cite to *Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014), and its discussion of English law, to argue that the claims underlying the Third-Party Complaint are claims that "arise from or are connected with" the Tomkins Loan.  (*See* TPD Reply Mem. 9–10.)  Accordingly, the Court will consider English law on the question of whether the claims are subject to the clause.  *Cf. F5 Capital v. RBS Sec. Inc.*, No. 14-CV-1469, 2015 WL 5797019, at *3 & n.6 (D. Conn. Sept. 30, 2015) (applying general contract law principles and federal precedent to analyze forum selection clause where the only reference to English law was citation to an English statute and federal cases "which themselves reference English law," specifically because "[t]he purpose of the[] citations [wa]s to illustrate that English law is consistent with the law of th[e] [Second] Circuit regarding the general treatment and scope of foreign [sic] selection clauses").  However, because neither AMTO nor Bedford cites English law addressing whether AMTO, as a non-signatory, can enforce the forum selection clause, the Court will apply general federal precedent to analyze this question.

that English law governed the agreement and that "any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English courts."  *Id.*

The Second Circuit's survey of English law began with, and emphasized, the "*Fiona Trust*" case, a 2007 decision of the Court of Appeal—the intermediate appellate court in the English Court system—which represented a decided shift in English law towards more liberal construction of jurisdiction clauses.  *See id.* at 224; *see also Premium Nafta Prods. Ltd. v. Fili Shipping Co.*, [2007] EWCA Civ 20, [18] ("*Fiona Trust*").[10]  Specifically, the *Fiona Trust* court eschewed drawing distinctions between various jurisdiction clause formulations (e.g., "arising out of" or "arising under" or "in connection with") and held that "any jurisdiction or arbitration clause in an international commercial contract should be liberally construed" and that, in the present case, "[t]he words 'arising out of' should cover every dispute except a dispute as to whether there was ever a contract at all."  *Fiona Trust*, [18].[11]  The House of Lords (now the U.K. Supreme Court) approved of the "fresh start" employed by the Court of Appeal and ultimately held that "courts should presume that an arbitration clause encompasses all disputes involving the relationship into which the contracting parties entered 'unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction.'"

---

[10] In *Fiona Trust*, the claimants contended that the contract they entered was procured by bribery and sought rescission, arguing that, "as a matter of construction, the question [wa]s not a dispute arising under the [contract] because it challenged the circumstances under which the parties entered into the [contract]."  *Martinez*, 740 F.3d at 224 (first alteration in original) (internal quotation marks omitted).

[11] *Fiona Trust* addressed an arbitration clause, but the language employed by the Court extended to jurisdiction clauses and has been applied by English courts to cases involving forum selection clauses.  *See Martinez*, 740 F.3d at 225.

*Martinez*, 740 F.3d at 224–25 (citing *Premium Nafta Prods. Ltd. v. Fili Shipping Co.*, [2007] UKHL 40 [13]).  As noted by the *Martinez* court, "English courts have repeatedly applied the holding in the *Fiona Trust* case to cases involving forum selection clauses."  *Id.* at 225.  For example, in *UBS AG v. HSH Nordbank AG*, [2009] EWCA (Civ) 585, the Court of Appeal found that "[t]he proper approach" to the construction of jurisdiction clauses is to "construe them widely and generously" and that "in the usual case[,] the words 'arising out of' or 'in connection with' apply to claims arising from pre-inception matters such as misrepresentation."  *Id.* at [82].

Relying on this precedent, the Second Circuit concluded that, under English law, the phrase "arising []under" should be construed as encompassing plaintiff's claim for discrimination based on perceived disability.  *Martinez*, 740 F.3d at 224 (alteration in original).  The Second Circuit rejected the plaintiff's argument in *Martinez* that "because his discrimination claims do not depend upon the existence of his employment contract under either English or American law," they do not arise under the contract, portraying the argument as advancing the claim that the forum selection clause only encompasses breach of contract claims—a notion directly rejected in *Fiona Trust*.  *Id.* at 226–27.  The Second Circuit further noted that to bring a claim for employment discrimination under English law, an employee must actually establish that he was employed and dismissed from that employment, and that the underlying illegality of the employment contract precluded a discrimination claim.  *Id.* at 226.  In these ways, the action "arises under" the employment contract.  *Id.*

More recently, in *Rio Tinto PLC v. Vale S.A.*, No. 14-CV-3042, 2014 WL 7191250 (S.D.N.Y. Dec. 17, 2014), the district court surveyed English law and reached the opposite

16

conclusion—that the claims brought by the plaintiff did not "arise out of or in connection with" an agreement. *Id.* at *11–12. In that case, the plaintiff and the defendant entered into a confidentiality agreement which required that claims "arising out of or in connection with" the agreement shall be brought in English courts. *Id.* at *1 n.2. The plaintiff eventually brought suit in the Southern District of New York, alleging RICO violations and common law claims of fraud, conspiracy to commit fraud, aiding and abetting fraud, and fraudulent inducement, claiming that the defendants joined forces to defraud the plaintiff and steal its rights to mine iron ore in certain regions of Guinea. *Id.* at *1.

Once again starting with *Fiona Trust*, the district court noted that "English courts have on occasion concluded that statutory and tort claims fall within a contract's forum selection clause," but noted that "such a result appears to be limited to situations . . . in which a party's statutory or tort claim depends upon 'the validity or enforceability of the contract.'" *Id.* at *11 (quoting *Fili Shipping Co. v. Premium Nafta Prds. Ltd.*, [2007] UKHL 40, [13]). Because the RICO and fraud claims in that case did not depend upon the validity or enforceability of the confidentiality agreement—rather, the duties and obligations of the agreement were "subsidiary (or irrelevant) to [the plaintiff's] causes of action," and any breach of the terms of the agreement was "incidental to the pursuit of [its] fraud and RICO claims"—the court found that the claims did not arise out of the agreement and thus the claims need not be brought in England. *Id.* at *11–12.

The Court concludes that Bedford's defenses, counterclaims, and third-party claims are much more akin to the claims in *Martinez* than the claims in *Rio Tinto*. Unlike the claims in *Rio Tinto*, the defenses and claims that ultimately seek a setoff undeniably rely on the validity and

17

enforceability of the Tomkins Loan.  In *Martinez*, the Second Circuit determined that the need to establish a valid underlying employment contract in an employment discrimination claim was sufficient to find that the discrimination claims arose out of the employment contract.  *Martinez*, 740 F.3d at 226.  In the same vein, to establish any right to a setoff, Bedford must establish a valid underlying contractual agreement that requires AMTO or Energokom to pay it money.  As Bedford itself puts it, "a setoff should be allowed *based on the Tomkins Loan*."  (Def.'s Summ. J. Opp'n 7 (emphasis added).)  The same is true for Bedford's civil conspiracy and fraudulent conveyance counterclaims and third-party claims.  Each requires the existence of the Tomkins Loan, just as the employment discrimination claims in *Martinez* required the existence of the underlying employment contract.

In its civil conspiracy claim, Bedford alleges that AMTO and Third-Party Defendants tortiously conspired to put forward AMTO as a litigant in New York state courts to avoid "Bedford's rights of setoff and counterclaim against Energokom."  (Answer ¶ 59; *see also* Third-Party Compl. ¶ 31; Def.'s MTD Opp'n 15 ("The Second Claim asserts that Kuznetsov, Energokom[,] and AMTO engaged in a civil conspiracy . . . to enable AMTO to collect the Bedford Loans by means of a fraudulent conveyance, thus tortiously interfering with Bedford's *contractual rights* of setoff and counterclaim against Energokom." (emphasis added)).)  The entire legal basis for the claim is the existence of contractual rights that Bedford claims it holds against Energokom, and Bedford repeatedly refers to the contractual right to setoff, with which AMTO and Third-Party Defendants allegedly conspired to interfere.  (*See, e.g.*, Third-Party Compl. ¶ 29 (alleging that other Parties' actions were "all in violation of Bedford's *contractual*

*rights of setoff*" (emphasis added)); Def.'s MTD Opp'n 17 ("Bedford acquired its *contractual*

*right to a setoff* against AMTO in timely fashion, and can properly assert that right." (emphasis

added)).)  Bedford's reliance on the contractual right to establish its claim is logical, given that,

as the name hints, establishing a claim for tortious interference with contract under New York

law requires a showing of "the existence of a valid contract between the plaintiff and a third

party."  *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012); *see*

*also Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996) (same).[12]

Likewise, Bedford cannot succeed on its fraudulent conveyance claim without

establishing a valid loan agreement indebting Energokom to Bedford.  "It is well settled that in

order to set aside a fraudulent conveyance, one must be a creditor of the transferor."  *Eberhard v.*

*Marcu*, 530 F.3d 122, 129 (2d Cir. 2008); *see also Galgano v. Ortiz*, 732 N.Y.S.2d 77, 78 (App.

Div. 2001) (holding that complaint failed to state claim for fraudulent conveyance under § 276

because, among other reasons, "[t]he plaintiffs . . . failed to establish their status as creditors of

any of the defendants"); *cf.* N.Y. Debt. and Cred. Law § 276 ("Every conveyance made and

every obligation incurred with actual intent, . . . to hinder, delay, or defraud either *present or*

*future creditors*, is fraudulent *as to both present and future creditors*." (emphases added)).

Recognizing this, Bedford's fraudulent conveyance counterclaim and third-party claim each

emphasize Energokom's indebtedness to Bedford as a result of the Tomkins Loan.  (*See* Answer

---

[12] Although Bedford styles its claim as one for civil conspiracy, "New York does not recognize an independent tort of conspiracy."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  Thus, to state an actionable claim for civil conspiracy Bedford must state a cause of action for the tort underlying the alleged conspiracy.  *Id.*

19

¶¶ 43–44 ("As of October 1, 2012, Energokom owed Bedford more than $367,000[,] . . . [which] was the result of [the Tomkins Loan]."); Third-Party Compl. ¶ 25 ("Energokom is indebted to Bedford by virtue of the Tomkins Loan.").)

Ultimately, Bedford's argument that its claims and defenses are "secondary and relatively attenuated" to the Tomkins Loan, as compared to "a simple attempt to enforce the Tomkins Loan," (Def.'s MTD Opp'n 20; *see also* Def.'s Summ. J. Opp'n 11–12), "suggests that the forum selection clause only encompasses breach of contract claims," an approach rejected by English courts. *Martinez*, 740 F.3d at 226.[13]  Indeed, "[t]he scope of a forum selection clause does not turn on 'whether an ingenious pleader could frame a cause of action without actually mentioning the . . . [a]greement.'" *Id.* at 227 (first alteration in original) (quoting *Skype Techs. SA v. Joltid Ltd.*, [2009] EWHC 2783(Ch), [19]); *accord Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99-CV-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (applying federal law and noting that a "forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationships, or if the gist of those claims is a breach of that relationship" (internal quotation marks omitted)).

Bedford also states, without elaboration, that the Court should find the forum selection clause inapplicable because "at least some of the parties[] are not subject to the clause." (Def.'s

---

[13] Additionally, the Court notes that Bedford's Third-Party Complaint seeks the following relief for its fraudulent conveyance claim:  "Bedford is entitled to avoid the fraudulent conveyance(s) described above *and to collect the balance due on the Tomkins Loan from Energokom*." (Third-Party Compl. ¶ 26.)  Thus, Bedford's fraudulent conveyance claim, at least against Third-Party Defendants, *is* essentially a breach of contract claim.

Summ. J. Mem. 12–13.)  In general, "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (quoting *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009)).  "Courts in this Circuit have held that a range of transaction participants, parties[,] and non-parties should benefit from and be subject to forum selection clauses." *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09-CV-7268, 2009 WL 4907060, at *2 n.4 (S.D.N.Y. Dec. 21, 2009); *see also Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557, 2009 WL 2029796, at *15 (E.D.N.Y. June 10, 2009) (same).  Specifically, "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory" such that "the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Magi XXI, Inc.*, 714 F.3d at 723.  Applying this rule, courts in the Second Circuit have permitted non-parties to enforce forum selection clauses where the signatory's claims against the non-signatory defendant are substantially identical to its claims against a signatory defendant.  *See Universal Grading Serv.*, 2009 WL 2029796, at *17 (finding that non-signatory co-defendants were bound by forum selection clause where the plaintiff's claims were "substantially identical with regard to each defendant"); *Novak v. Tucows*, No. 06-CV-1909, 2007 WL 922306, at *13 (E.D.N.Y. Mar. 26, 2007) (ordering dismissal of claims against non-signatory of agreement containing forum selection clause because the plaintiff's claims against the non-signatory were "nearly identical to" those brought against signatory);

21

*Weingard v. Telepathy, Inc.*, No. 05-CV-2024, 2005 WL 2990645, at *6 (S.D.N.Y. Nov. 7, 2005) (enforcing forum selection clause as to all defendants, including non-signatories, where the plaintiff's claims were "substantially identical with respect to each defendant" and the claims all "arise out of the defendants' relationships with each other"); *see also Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (summary order) (noting that "a forum selection clause in a contract encompasses claims made against a non-signatory where (1) those claims are 'nearly identical to' the claims against the signatory, (2) 'arise out of' the same transaction as those claims, and (3) the non-signatory consents to foreign jurisdiction").

It was certainly foreseeable that any counterclaims or defenses Bedford might raise against AMTO related to the Tomkins Loan would be subject to the forum selection clause in the Tomkins Loan agreements. The counterclaims raised by Bedford—for fraudulent conveyance and civil conspiracy—are identical to those raised against Energokom, a signatory, and are based on the same conduct. And the particulars of Bedford's setoff defense against AMTO are predicated directly on Energokom's conduct as a signatory to the Tomkins Loan, specifically, its failure to pay back the loan. *See Cuno, Inc. v. Hayward Indus. Prods., Inc.*, No. 03-CV-3076, 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) ("A non-party is 'closely related' to a dispute if its interests are completely derivative of and directly related to, if not predicated upon[,] the signatory party's interests or conduct." (some internal quotation marks omitted)). Accordingly, the Court finds that AMTO, despite not being a signatory to the Tomkins Loan, can enforce the clause with respect to Bedford's defenses and counterclaims.[14]

---

[14] For the same reasons, Kuznetsov, who is individually not a signatory to the Tomkins

22

Because the parties and claims at issue in this Action are subject to the forum selection clause, the clause is presumptively enforceable.  *See Martinez*, 740 F.3d at 217.

### b.  Whether the Clause is Enforceable

Bedford can overcome the presumption of enforceability only by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).  "In the Second Circuit, [courts] determine whether a forum selection clause is invalid under *Bremen* by examining four factors that, in effect, are four subparts that fall under the final prong of [the] four-part framework governing the effect of forum selection clauses."  *Martinez*, 740 F.3d at 227–28.  The forum selection clause should not be enforced if:  "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."  *Id.* at 228 (internal quotation marks omitted); *see also Starkey*, 796 F.3d at 198 (same); *Giordano v. UBS, AG*, No. 14-CV-8252, 2015 WL 5671970, at *4 (S.D.N.Y. Sept. 25, 2015) (same).

Bedford offers a number of reasons why enforcement of the forum selection clause in this case would be unreasonable or unfair.  Specifically, Bedford argues that:  (1) AMTO and Third-Party Defendants acted in bad faith when Energokom assigned the Bedford Loans to AMTO and then flouted the Latvian forum selection clause in the Bedford Loan agreements when it brought

Loans, can enforce the clause.

the original action in New York state court in 2012, (*see* Def.'s Summ. J. Opp'n 13–14; Def.'s MTD Opp'n 22); (2) requiring Bedford to raise its defenses, counterclaims, and third-party claims in England would be "inefficient" and would "run the substantial risk of inconsistent results," (*see* Def.'s Summ. J. Opp'n 14; Def.'s MTD Opp'n 22); (3) the "universal policy of the American courts favoring setoffs instead of multiplicitous lawsuits and disfavoring the piecemeal resolution of controversies" qualifies as a strong public policy rendering the clause unenforceable (*see* Def.'s Summ. J. Opp'n 14; Def.'s MTD Opp'n 22); and (4) an English court "might well conclude" that it lacked the ability to entertain Bedford's setoff defense or counterclaims/third-party claims, which would deprive Bedford of remedies and the right to be heard, (*see* Def.'s Summ. J. Opp'n 14; Def.'s MTD Opp'n 22).

Bedford cannot overcome the presumptive enforceability of the forum selection clause by reference to AMTO and Energokom's allegedly "collusive[]" transfer of the Bedford Loans. While a court will not enforce a forum selection clause when it is "the result of fraud or overreaching," *Martinez*, 740 F.3d at 228, the fraud must be related to the clause itself, not the contractual relationship between the parties more generally.  *See Novak*, 2007 WL 922306, at *10 ("[W]here a party attempting to defeat a forum-selection clause alleges fraud, courts must look to whether *the inclusion of the clause itself was fraudulent*." (emphasis added)); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 494 (S.D.N.Y. 2006) ("[T]he fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally."); *cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S.

585, 595 (1991) (referring to a "bad-faith motive" as one in which the party set a specific forum as a means of discouraging pursuit of claims).[15]

Bedford's vague and unsubstantiated concern that enforcement of the forum selection clause would be "inefficient" and "run the substantial risk of inconsistent results," does not rise to the level necessary to deem enforcement of a forum selection clause unreasonable. *See Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 434–35 (E.D.N.Y. 2014) ("[T]he efficiency and economy achieved by trying interrelated claims in one forum should not trump the forum-selection clauses agreed to by [the parties].")"); *La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.*, No. 02-CV-40, 2002 WL 31812679, at *2 (S.D.N.Y. Dec. 12, 2002) (rejecting argument that a forum selection clause "should not be enforced because it would violate principles of judicial efficiency and uniformity," and noting that, while "it might be more efficient to dispose of the entire case in one court, . . . that is not the standard for overcoming a forum selection clause"); *see also Indemnity Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06-CV-615, 2008 WL 4922327, at *8 (S.D.N.Y. Feb. 27, 2008) ("[E]fficiency and fairness concerns, without more, cannot generally justify the nonenforcement of a mandatory forum selection clause.").

---

[15] Bedford also asserts that the other Parties acted in bad faith by instituting litigation in New York, instead of Latvia (despite the existence of a Latvian choice of law provision in the Bedford Loan documents), as a means to deter setoffs and counterclaims. (*See, e.g.*, Def.'s Summ. J. Mem. 13.) Bedford does not explain how AMTO's decision to file suit in New York instead of Latvia affected Bedford's right to assert a setoff and its counterclaims. Presumably, AMTO would make the same arguments related to the forum selection clause in the Tomkins Loans even if the suit had been brought in Latvia.

As mentioned above, Bedford also contends that enforcing the clause would violate the "universal policy of the American courts favoring setoffs instead of multiplicitous lawsuits and disfavoring the piecemeal resolution of controversies."  (Def.'s Summ. J. Opp'n 14; Def.'s MTD Opp'n 22.)  This is, at bottom, a recycling of Bedford's argument that the clause should not be enforced because doing so would be inefficient.  As the Court noted, courts in the Second Circuit routinely hold that the inefficiencies involved in piecemeal litigation resulting from the enforcement of forum selection clauses is not sufficient to trump the clause.  Thus, Bedford has not carried its "heavy burden," *Atomi*, 2015 WL 1433229, at *2, to demonstrate the forum selection clause should not be enforced based on the public policy favoring the use of setoffs, which is—as characterized by Bedford—based on the same efficiency concerns that courts have held do not require a finding that the clause is unenforceable.[16]

Finally, Bedford's suggestion that it may be left without a remedy because English courts "might well conclude" that they could not entertain Bedford's claims, amounts to "only unsubstantiated speculation that no remedy is available" in English courts and is thus "wholly inadequate to meet the heavy burden [Bedford] bear[s] to show unreasonableness."  *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997); *see also Kasper*

---

[16] Bedford claims, without any support, that "English courts no doubt have the same rule" as the United States regarding the favoring of setoffs to avoid circuitous litigation.  (Def.'s Summ. J. Opp'n 11.)  The Court notes that, in *Aectra Refining & Mktg. Inc v. Exmar NV*, [1994] 1 W.L.R. 1634, the English Court of Appeal explained that where a defendant pleads a setoff that is not based on the same transaction underlying the plaintiff's claim (or, in other words, pleads an "independent setoff"), the parties' interest in "hav[ing] their various disputes tried in one action instead of two or more" is only a "modest advantage" and is "outweighed by the desirability of giving effect to an agreement to submit a particular dispute to arbitration or the jurisdiction of a foreign court."  *Id.* at 1651.

*Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 566 (S.D.N.Y. 2013) (same).

Bedford has thus failed to satisfy the burden it bears to prevent the Court from enforcing the forum selection clause.  Because the Court finds that the forum selection clause is enforceable, the Court dismisses the Third-Party Complaint in its entirety, and dismisses Bedford's counterclaims and strikes its affirmative defenses of setoff and fraudulent conveyance, on the condition that AMTO and Third-Party Defendants will stipulate to jurisdiction in England and to accept service of process.[17]  Remaining for the Court's consideration is AMTO's Motion for Summary Judgment on its breach of contract claims.

### B.  Summary Judgment on Plaintiff's Claims

#### 1.  Standard of Review

Summary judgment shall be granted where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must

---

[17] While the forum selection clause requires dismissal of Bedford's affirmative defenses that rely on the Tomkins Loan, Bedford's first affirmative defense, that AMTO has not "set forth a claim on which relief can be granted," is not stricken.  "It is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer." *Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).  Indeed, "[a] plaintiff suffers no prejudice when the failure-to-state-a-claim defense is used in the pleadings."  *SEC v. Toomey*, 866 F. Supp. 719, 723 (S.D.N.Y. 1992); *see also Aros v. United Rentals*, No. 10-CV-73, 2011 WL 5238829, at *4 (D. Conn. Oct. 31, 2011) ("It is well settled . . . that a party may include failure to state a claim as an affirmative defense in its answer, and that such a defense is invulnerable as against [a motion to strike]." (internal quotation marks omitted)).

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper*

*Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

(same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute

exists." *Vt. Teddy Bear Co*., *v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

*Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at

*2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on

the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go

to the trier of fact on an essential element of the nonmovant's claim," in which case "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. PriceWaterhouse*

*Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks

omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to

create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to

'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cty.*

*of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere

allegations or denials contained in the pleadings," *Walker v. City of N.Y.*, No. 11-CV-2941, 2014

WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter

alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment

is properly supported by documents or other evidentiary materials, the party opposing summary

judgment may not merely rest on the allegations or denials of his pleading . . . .")).

"On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).  At

summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess

whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks

omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No.

1358, No. M21-88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same).  Thus, a court's

goal should be "'to isolate and dispose of factually unsupported claims.'"  *Geneva Pharm. Tech.*

*Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477

U.S. 317, 323–24 (1986)); *see also Schatzki v. Weiser Capital Mgmt., LLC*, No. 10-CV-4685,

2013 WL 6189465, at *14 (S.D.N.Y. Nov. 26, 2013) (same).

<u>2.  Plaintiff's Breach of Contract Claims</u>

<u>a.  Applicable Law</u>

Under New York law, a plaintiff must establish four elements to sustain a breach of

contract claim:  "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the

defendant, and (4) damages."  *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d

Cir. 2011); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (same); *Hampshire*

*Props. v. BTA Bldg. & Dev., Inc.*, 996 N.Y.S.2d 129, 130 (App. Div. 2014) (same).[18]

---

[18] As noted above, the Bedford Loans contain a Latvian choice of law provision.  (*See*

b.  Application

Bedford concedes that it accepted but has not repaid either of the Bedford Loans, (*see* Def.'s 56.1 ¶¶ 6, 9), despite each loan being past due, (*see* Krizhanovsky Aff. Exs. 2–3 (May 28, 2012 repayment date for the $100,000 Loan); *id.* Exs. 5–6 (December 31, 2012 repayment date for the $54,000 Loan)).  Instead of challenging any of the elements of the cause of action, Bedford argues that it has a defense of setoff, based on the Tomkins Loan, against AMTO's claim under the Bedford Loans.  But as noted above, Bedford's setoff defense is subject to the forum selection clause and thus will not be considered by this Court.  Bedford's only challenge to AMTO's Motion that is not founded upon the existence of the Tomkins Loan is its argument that there may be fact issues remaining as to the validity of the assignment of the Bedford Loans from Energokom to AMTO.  (*See* Def.'s Summ. J. Mem. 15–16; *see also* McGuire Decl. ¶¶ 9–11; *id.* at Ex. 3; Answer ¶¶ 8, 25.)

---

Krizhanovsky Aff. Exs. 2, 5.)  However, AMTO's brief assumes that New York law controls the breach of contract issue.  (*See* Pl.'s Summ. J. Mem. 6–7.)  And despite reference to the Latvian law provision, Bedford does not argue that this Court should apply Latvian law to AMTO's breach of contract claim and makes no reference to Latvian law—aside from its analysis of the separate issue of whether the assignment of the Bedford Loans from Energokom to AMTO was valid.  Moreover, Bedford relies on New York case law to support its setoff defense to AMTO's contract claims.  (*See* Def.'s Summ. J. Mem. 9.)  Accordingly, because the Parties' briefs assume that New York law controls the issue, "and such implied consent is sufficient to establish choice of law," the Court applies New York law to the breach of contract claims.  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (alteration and internal quotation marks omitted); *see also Johnson v. Hallett*, No. 14-CV-1922, 2015 WL 1516661, at *4 n.4 (S.D.N.Y. Mar. 31, 2015) ("The [p]arties cite only New York law in their briefing to the [c]ourt, and this implied consent is sufficient to establish choice of law." (internal quotation marks omitted)); *Nipon v. Yale Club of N.Y.C.*, No. 13-CV-1414, 2014 WL 6466991, at *4 n.7 (S.D.N.Y. Nov. 18, 2014) (applying New York law where "[b]oth parties rely on New York law and do not claim that the law of any other forum applies").

Along these lines, Bedford asks that the Court deny AMTO's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(d), because it cannot present facts essential to its opposition.  Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . deny [the motion]."  A party resisting summary judgment on this ground must submit an affidavit or declaration showing "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort [the] affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (alteration and internal quotation marks omitted); *see also Bank of Am., Nat'l Ass'n v. Kamico, Inc.*, No. 11-CV-5255, 2012 WL 1449185, at *4 (S.D.N.Y. Apr. 24, 2012) (same).

Bedford submits a declaration from its attorney stating that Bedford seeks information related to how the Bedford Loans assignment was formally approved by Energokom and, implicitly, information about AMTO's and Energokom's corporate structures and business activities.  (*See* McGuire Decl. ¶¶ 9–11; Def.'s Summ. J. Mem. 15–16.)[19]  Attached to the declaration is an English translation of Section 139 of the Commercial Law of Latvia.  (McGuire Decl. Ex. 3.)  Bedford contends that the information requested will shed light on whether the assignment is valid under Latvian Law.  (*See* Def.'s Summ. J. Mem. 16; McGuire Decl. ¶¶ 9–11.)

---

[19] For example, Bedford seeks information addressing whether a shareholder meeting approving the assignments occurred at either AMTO or Energokom, and whether Krizhanovsky, as a member of the boards of directors of both Energokom and AMTO, voted in favor of the

The Court agrees with Bedford that it is entitled to discovery addressing the circumstances of the assignment of the Bedford Loans from Energokom to AMTO before AMTO can be awarded summary judgment on its breach of contract claims.  The discovery sought by Bedford is targeted and could yield factual information related to material issues, such as whether AMTO, as an assignee, has standing to pursue this Action.  *See Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, No. 12-CV-1376, 2015 WL 4715329, at *5–7 (D. Conn. Aug. 24, 2015) (noting that whether purported assignor assigned its rights under an agreement to the plaintiff "is material to the question of [the plaintiff's] standing," and, after finding that "there [was] a general dispute of material fact as to whether [the plaintiff] ha[d] rights under the [a]greement and therefore standing to bring th[e] lawsuit," denying the plaintiff's motion for summary judgment); *Pelican Equity, LLC v. Brazell*, No. 09-CV-5927, 2010 WL 3377452, at *4 (S.D.N.Y. Aug. 17, 2010) ("While an assignee of claims may have standing in certain circumstances, a void assignment cannot confer standing on the purported assignee." (citations omitted)); *Diamond v. Federal Emergency Mgmt. Agency*, 689 F. Supp. 163, 166–68 (E.D.N.Y. 1988) (dismissing claim seeking recovery on assigned flood insurance policy where assignment of policy violated Assignment of Claims Act and was thus void); *cf. Sardanis v. Sumitomo Corp.*, 723 N.Y.S.2d 466, 469–70 (App. Div. 2001) (finding that assignment was void because of a failure to comply with New York's Business Corporation Law and thus dismissing the complaint).  Especially given that there has been no discovery to date in this case, Bedford

---

assignment.  (*See* McGuire Decl. ¶ 10.)

32

should be provided the opportunity to pursue its defense before the Court grants Plaintiff's Motion for Summary Judgment.

Accordingly, because Bedford "cannot present facts essential to justify its opposition," the Court denies AMTO's Motion for Summary Judgment pursuant to Rule 56(d), without prejudice, so that the Parties can engage in discovery addressing the validity of the Bedford Loans assignment.

### III. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment is denied, without prejudice. Plaintiff's Motion To Strike Defendant's Affirmative Defenses is granted in part and denied in part, and its Motion To Dismiss Defendant's Counterclaims is granted. Finally, Third-Party Defendants' Motion To Dismiss the Third-Party Complaint is granted. The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 39, 42).

SO ORDERED.

Dated: March 10, 2016
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

33